E. SOLÉ & Co., S. EN C., demandante y apelada, *v.* PEDRO V. PEDROSA y el DR. JOSÉ RAMOS LEBRÓN, demandados y apelantes.

No. 6574.—*Sometido:* Noviembre 20, 1935. *Resuelto:* Febrero 14, 1936.

*Arturo Aponte, R. Rodríguez Alberty* y *Miguel A. Bustelo*, abogados de los apelantes; *E. H. F. Dottin*, abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

La demanda origen, de este pleito se interpuso en julio de 1931 ante la Corte de Distrito de San Juan, por la mercantil E. Solé & Co., S. en C., contra Pedro V. Pedrosa y su fiador el Dr. José Ramos. En ella se alegó en resumen que en marzo 18, 1930, demandante y demandados suscribieron cierto contrato sobre consignación de mercaderías, con arreglo al cual la demandante entregó a Pedrosa y éste recibió entre marzo 20 y mayo 25, 1931, gomas y tubos para automóviles por valor de $1,545.28, habiendo Pedrosa abonado $9.42, quedando los demandados a deber el saldo que aceptaron de $1,535.86.

Contestó el demandado mostrando su conformidad con algunos hechos de la demanda, negando otros y alegando como materia nueva constitutiva de oposición que en, julio, 1931, la demandante y el demandado Pedrosa, de común acuerdo, dieron por rescindido y cancelado el contrato sobre consignación, y en consideración a ello Pedrosa entregó a la demandante como saldo las mercaderías que tenía en su estableci-

miento, todo sin la conformidad y el conocimiento del otro demandado Dr. Ramos.

Fué el pleito a juicio y la corte lo decidió en contra de los demandados, quienes apelaron, señalando en su alegato dos errores cometidos a su juicio por la corte al interpretar el contrato en litigio en favor de la demandante y en contra del demandado Ramos y al resolver que en todo momento era Ramos responsable a virtud de la fianza que prestara.

Ambos señalamientos de error serán estudiados y resueltos conjuntamente.

■ El contrato de que se trata firmado en marzo 18, 1930, se titula de consignación de mercaderías. Por él se compromete la mercantil demandante a consignar al demandado Pedrosa en Caguas gomas y tubos hasta un valor de cinco mil dólares para ser vendidos por Pedrosa y pagados por éste a la demandante.

La cláusula novena del contrato dice:

"Es expresamente convenido y estipulado que este contrato estará en vigor por un período de tres meses contados desde la fecha del mismo, entendiéndose que transcurridos dichos tres meses de conformidad ambas partes y sin previo aviso se considerará prorrogado por otro período de tres meses y así sucesivamente."

Y la fianza prestada por el demandado Ramos, lo fué en los siguientes términos:

"Yo, José Ramos, M. D., mayor de edad y vecino de Fajardo, P. R., después de leer y examinar el contrato arriba transcrito, me constituyo en fiador, principal pagador y garantizar (sic) solidaria y mancomunadamente del contrayente de la segunda parte señor Pedro V. Pedrosa a favor de la contrayente de la primera parte Señores E. Solé & Cía. S. en C., obligando con él y para él a las responsabilidades del contrato anteriormente especificado, de acuerdo con las cláusulas del mismo y hasta la suma de cinco mil y no cents (5,000.00) dólares por cualquier saldo que en contra de la contrayente de la segunda parte resultase en cualquier tiempo a favor de la mercantil E. Solé & Cía. S. en C., renunciando por la presente al derecho de excusión de bienes del deudor directo y quedando obligado a favor de dicha mercantil E. Solé & Cía. S. en C. solidaria y mancomunadamente y simultáneamente al pago del saldo que hasta la suma in-

dicada y en cualquier tiempo resultare a favor de la misma con exactamente iguales obligaciones que dicho deudor directo, o sea el contrayente de la segunda parte.

''Así mismo me someto expresamente a la jurisdicción de las cortes municipales y de distrito de San Juan renunciando por la presente el derecho de domicilio para cualquier acción que pudiera derivarse del contrato que antecede.''

Por la demandante declaró en el juicio su socio gestor Mariano Mascaró. En substancia dijo que en mayo 25, 1931, al no pagar Pedrosa su saldo deudor de $1,535.86, envió al empleado de la casa Enrique Mora a requerir de pago a Ramos, yendo Ramos a los pocos días a la oficina de la demandante y manifestando que no podía pagar de momento cantidad tan importante, pero que haría una proposición para pagarla con comodidad, proposición que nunca hizo. La deuda no ha sido satisfecha. A repreguntas del abogado de los demandados admitió que los tubos y gomas consignados a Pedrosa durante los tres primeros meses del contrato, fueron pagados.

Por los demandados declaró el propio Dr. Ramos, según la exposición del caso, como sigue:

''Que el 18 de marzo de 1930 se le presentó el Sr. Pedrosa en Fajardo con otro señor para que le diera la firma para unas gomas que iba a tomar, y le dió la firma y firmó el contrato. Que eso fué el 18 de marzo de 1930. El 19 de marzo, que es el día de mi santo, estuve en San Lorenzo, donde vive mi padre, a quien le manifesté que había dado una garantía. Que ese mismo día pasó por Caguas y le pidió al Sr. Pedrosa, el contrato que había firmado, documento que en Fajardo no lo leyó. Que entonces lo leyó notando que la suma por la cual lo iba a garantizar estaba en blanco, cogió el contrato, se lo pidió prestado y fué a consultar con el Licdo. Rodríguez Alberty; y con motivo de esa entrevista con el abogado, el testigo le escribió una carta a E. Solé & Co. en 20 de marzo de 1930· Que el documento que se le pone de manifiesto es una copia carbón de la carta original de referencia que le dirigió a E. Solé & Co. en marzo 20 de 1930. Que el original de esa carta lo puso el testigo bajo sobre, le puso la dirección de E. Solé & Co. a San Juan de Puerto Rico; le puso un sello de correos de dos centavos, y la depositó personalmente en el correo.

"Dicha carta copiada a la letra, dice así:

" 'Fajardo, P. R., marzo 20, 1930.—Sres. E. Solé & Cía., San Juan, P. R.—Estimados señores:

" 'Después de haberme enterado del contrato que firmé como garantizador del señor Pedro V. Pedrosa con Uds. y habiendo notado que la cantidad por la que represento al Sr. Pedrosa está en blanco, les escribo para avisarles que solamente seré responsable por el término del contrato, que es de tres meses solamente y que no garantizaré por más tiempo adicional.—Muy atentamente, Dr. José Ramos.'

"Este documento fué ofrecido en evidencia y los demandantes se opusieron a su admisión. La Corte lo admitió como prueba como exhibit letra 'A' de los demandados, con la oposición de los demandantes, quienes anotaron una excepción contra su resolución.

"Que después de escrita esa carta el testigo no supo nada más de este asunto, ni nadie le habló del mismo, habiendo sido la primera noticia que tuvo de él, la notificación que el márshal le hizo, emplazándolo. Que después de haber sido notificado por el márshal, el testigo estuvo en la casa de Solé al día siguiente, cuando ya había sido emplazado y llevado a los tribunales. Fué allí buscando a Pedrosa y no habló con Solé, ni con ningún Mascaró, con quien no ha hablado nunca en la vida. Que ni el testigo los conoce a ellos, ni ellos al testigo, ni sabe quiénes son ellos."

La demandante llamó entonces a declarar a Enrique Mora y a Mariano y a Juan Mascaró.

El primero, empleado de la demandante, sostuvo que entre mayo y junio de 1931 fué enviado a Fajardo a notificar a Ramos del estado de la cuenta de Pedrosa y a requerirle de pago. Que Ramos le pidió que dijera al Sr. M. Mascaró que dentro de unos días pasaría por su oficina. Que estuvo en ésta, conversó con M. Mascaró y terminó manifestando: "Bueno, Sr. Mascaró, no habrá más remedio que pagar."

Las declaraciones de Mariano y Juan Mascaró, socios gestores de la mercantil demandante, y auditor el primero de la misma, fueron al efecto de negar la existencia de la carta que se introdujo como prueba al declarar el demandado Ramos y que la Corte admitió con la oposición de la demandante.

Llamado por su abogado declaró el demandado Pedrosa. Manifestó que pocos días después de firmado el contrato estuvo a verlo en Caguas Enrique Mora y le mostró una carta

de Ramos recibida por la casa de Solé notificándole que sería responsable sólo por tres meses y. le dijo "Usted tendrá que buscar otra firma para continuar el negocio de gomas", respondiendo el testigo: "Trataré de ver al señor Ramos porque si se le olvida son cosas de él." Que después de eso no vió al Sr. Ramos, ni habló nunca con él.

Volvió a declarar Mariano Mascaró expresando "Que en aquella época tenía dos vendedores y el señor Mora no hacía el distrito de Caguas, no tenía relación ninguna con el distrito de Caguas; era un tal Gándara, que él mismo firmó el *report* de abril, mayo y junio y cree que algunos más."

En su relación del caso y opinión dice la corte sentenciadora:

"De la evidencia aparece que después de los tres primeros meses de la vigencia del contrato, las partes continuaron las negociaciones de conformidad y quedó así prorrogado hasta el 25 de mayo de 1931, en que terminó, y no era necesario previo aviso, por haberlo así convenido las partes, y obligándose el fiador, principal pagador, y garantizador, a las responsabilidades del contrato, de acuerdo con sus cláusulas y hasta la suma de $5,000, que en cualquier tiempo resultare a favor de E. Solé & Cía., S. en C. con exactamente iguales obligaciones que el deudor directo, o sea el contrayente de la segunda parte.

"Un conocido proverbio citado por Manresa en su obra sobre Comentarios al Código Civil, dice: 'Quien afianza paga.' Y aún cuando el demandado Dr. Ramos en nada se ha beneficiado, él se obligó como fiador y principal pagador, con conocimiento de lo que hacía, y debe cumplir la obligación por él contraída."

Y refiriéndose a la carta introducida en evidencia por los demandados había dicho antes:

"La carta fué admitida por ser una copia carbón, que se dice hecha al mismo tiempo que el original y que el testigo declaró haber puesto personalmente al correo.

"Mariano y Juan Mascaró, gestores de la demandante, negaron que el original de dicha carta fuera recibido por ellos en ningún momento. La presunción que establece el artículo 102, apartado 24, de que una carta dirigida y cursada por correo debidamente fué recibida en su oportunidad, es disputable y puede controvertirse mediante

otra evidencia, como lo fué en este caso, estimando la corte, por el resultado de la prueba, que dicha carta no fué recibida por la demandante. Además, el demandado Dr. Ramos no podía por sí solo, después de haber firmado el contrato, dejar sin efecto la cláusula 9ª. del mismo, referente a las prórrogas, siendo otra la teoría de su caso, según la materia de defensa en la contestación, o sea que el contrato quedó rescindido y cancelado en julio de 1931, cuando Pedrosa entregó todas las existencias y mercaderías que tenía como saldo de la reclamación y en descargo de las obligaciones, lo que se llevó a cabo sin su conformidad y conocimiento. Era una de las condiciones del contrato en caso de rescisión devolver las mercaderías (stock) a su dueña, la parte de la primera parte, y no hubo evidencia de la alegada materia de defensa.''

La evidencia aportada fué, pues, contradictoria. La corte sentenciadora resolvió el conflicto en pro de la demandante. No creyó a los testigos de los demandados que fueron ellos mismos. Y como no se ha demostrado que la corte actuara movida por pasión, prejuicio o parcialidad o que cometiera error manifiesto alguno, su resolución debe prevalecer y prevalece.

▮ Entonces la cuestión queda reducida a la interpretación de la cláusula novena del contrato. Se admitió por la demandante en el juicio que las mercaderías por ella consignadas al demandado Pedrosa durante los primeros tres meses de existencia del contrato, fueron pagadas por él. El saldo que se cobra procede de mercaderías consignadas meses después. Y está tácitamente admitido que vencidos los primeros tres meses no se solicitó ni se obtuvo el consentimiento expreso del fiador para la continuación del contrato. Este continuó en su curso ordinario de consignaciones y pago por parte de la demandante y de Pedrosa respectivamente hasta que terminó con el saldo deudor sobre cuya cuantía no hay cuestión.

Y los apelantes sostienen en su alegato que:

''Cualquier persona de mediana inteligencia que lea esta cláusula llegará a la conclusión de que la misma quiere decir que para que haya prórroga se necesita LA CONFORMIDAD DE LAS PARTES, conseguida la cual no será menester aviso alguno. Ése fué el convenio que firmó

el Dr. Ramos suscribiéndolo como fiador y principal pagador 'Y CON EXACTAMENTE IGUALES OBLIGACIONES QUE EL DEUDOR DIRECTO, O SEA PEDRO V. PEDROSA.' ''

A nuestro juicio no tienen razón los apelantes. La conformidad de las verdaderas partes contratantes, E. Solé & Co., S. en C. y Pedro V. Pedrosa, surge implícita de la continuación del negocio.

Este no es un caso de prórroga concedida al deudor sin el consentimiento del fiador, ni es aplicable al mismo la jurisprudencia establecida en el de *Brunet, Sáenz & Co.* v. *Aponte,* 33 D.P.R. 524, porque los hechos básicos en uno y otro caso son distintos.

Es cierto que el propio Código Civil (artículo 1726, ed. 1930) dispone que la fianza no se presume, debiendo ser expresa y no pudiendo extenderse a más de lo contenido en ella y que la jurisprudencia ha sentado que los contratos de fianza son de interpretación restrictiva, pero ello no quiere decir que cuando la responsabilidad exigida se contrajo expresamente y surge clara la obligación del fiador, no deba ésta reconocerse y hacerse cumplir porque el fiador en nada se benefició y va a sufrir las consecuencias de la mala conducta o la desgracia de otro. Tal conclusión destruiría el contrato de fianza, ya que la garantía prestada resultaría académica en la casi totalidad de los casos.

*Debe confirmarse la sentencia recurrida.*

El Juez Asociado Sr. Córdova Dávila no intervino.